IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BEKHAM BAHADORANI, | ) |
|     Petitioner, | ) ) ) |
| v. | )   Case No. CIV-25-1091-PRW ) |
| PAMELA BONDI, In Her Official Capacity as Attorney General, *et al.*, | ) ) ) ) |
|     Respondents. | ) |

## ORDER

Before the Court is Petitioner Behkam Bahadorani's Verified Petition for Writ of Habeas Corpus (Dkt. 1). This matter has been fully briefed and is now ripe for judgment. For the reasons that follow, the Court **DENIES** the Petition (Dkt. 1).

### *Background*

Petitioner is an Iranian citizen, admitted to the United States in 1979 on a student visa. In 1999, he was granted lawful permanent resident status. In 2006, though, Petitioner plead guilty in Oklahoma state court to a variety of sexual crimes against children, including second-degree rape, sexual abuse, lewd molestation, and possession of child pornography. Following his convictions, the United States began removal proceedings against Petitioner in 2015, resulting in an order for removal on August 3, 2015. However, despite the United States's efforts to obtain the necessary travel documentation from Iran to allow for the lawful removal of Petitioner, the government was unable to do so, and Petitioner was released from ICE custody in June of 2016 on an order of supervision (OOS).

1

Fast forward to 2025, and ICE arrested and detained Petitioner on June 11, intending to finally effect his removal from the United States. Petitioner now asserts that his detention is unlawful because: (1) it is punitive and in violation of the Fifth Amendment, (2) the government failed to comply with the procedural requirements of 8 C.F.R. § 241.13(i)(2)–(3), (3) the government can't demonstrate that Petitioner will likely be removed, (4) he's complied with his conditions of release, and (4) the government's alleged violation of the "arbitrary and capricious" standard in 5 U.S.C. § 706(2)(A). Petitioner asks this Court to grant a writ of habeas corpus ordering his immediate release from detention and to grant a declaratory judgment finding that Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(1) and that Petitioner has previously demonstrated to the government's satisfaction that he is not significantly likely to be removed in the reasonably foreseeable future. Further, Petitioner seeks a declaratory judgment finding both that the government has failed to rebut Petitioner's showing prior to his re-detention and that he may not be detained again until the government properly rebuts such showing. Petitioner also asks this Court to enjoin the government from deporting and re-detaining Petitioner upon release unless a variety of conditions are met.

### *Legal Standard*

Pursuant to 8 C.F.R. § 241.13(i)(2):

> The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

> Additionally, 8 C.F.R. § 241.13(i)(3) states:
>
> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

"Any alien who is convicted of an aggravated felony at any time after admission is deportable."[1] Further, an individual convicted of rape or sexual abuse of a minor is considered to have committed an "aggravated felony[.]"[2]

Under normal circumstances, the government needs to remove an alien within 90 days of the issuance of a final order of removal.[3] Upon failure to remove within 90 days, the alien is subject to supervision,[4] but is still removable and "may be detained beyond the removal period."[5] While detainees may not be detained indefinitely, the government may hold them until detention becomes unreasonable, "measur[ing] reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal."[6] Further, this Court will "give expert agencies decisionmaking leeway in

---

[1] 8 U.S.C. § 1227(a)(2)(A)(iii).
[2] 8 U.S.C. § 1101(a)(43)(A).
[3] 8 U.S.C. § 1231(a)(1)(A).
[4] 8 U.S.C. § 1231(a)(3).
[5] 8 U.S.C. § 1231(a)(6).
[6] *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

matters that invoke their expertise."[7] This Court will "listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue[.]"[8]

## *Analysis*

**I.   Failure to comply with 8 C.F.R. § 241.13(i)(2)–(3) is at most harmless error.**

The harmless error standard applies in deportation[9] and administrative cases.[10] Accordingly, it is Petitioner's burden to show that the government's failure to abide by its own regulations prejudiced him.[11] The Court finds that Petitioner has failed to carry that burden.

Petitioner claims "there was zero compliance with 8 C.F.R. § 241.13(i)(2)–(3)[.]"[12] In its Sur-reply (Dkt. 18), the government states that it is unable to verify that Petitioner received a Notice of Revocation of Release, as required by 8 C.F.R. § 241.13(i)(3). Respondents do represent, though, that on the same day that Petitioner was detained, he was interviewed, provided the reasons for his detention, and was told that if he is not able to be removed to Iran, the government is considering the possibility of removing him to a

---

[7] *Id.* at 700.

[8] *Id.*

[9] *Nazaraghaie v. I.N.S.*, 102 F.3d 460, 465 (10th Cir. 1996) (citations omitted).

[10] *WildEarth Guardians v. Bureau of Land Management*, 870 F.3d 1222, 1238–39 (citations omitted).

[11] *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) (holding that errors in administrative proceedings do not call for reversal without plaintiffs demonstrating that such errors produced prejudice).

[12] *Reply*, (Dkt. 16), at 7.

third country.[13] Further, on June 30, 2025, less than three weeks after he was detained, Petitioner sat for an interview related to a review of his detention where he was able to submit information concerning his custody.[14] At this hearing, he did not provide any argument or evidence about his custody and potential removal.[15] The Court finds that the government did substantially comply with C.F.R. § 241.13(i)(2)–(3). Petitioner has provided conclusory statements about not recalling the government's compliance with the regulations, while the government has provided sworn statements of officers and even a copy of Petitioner's responses to an informal interview conducted after his detention, evidencing substantial compliance with the law.[16] While the government failed to provide a Notice of Revocation of Release to Petitioner, the Court finds for the following reasons that such failure is harmless error, and even then, such error has been mitigated by the government's substantial compliance with the law and cured by the opportunities Petitioner has had to contest his detention, both in front of ICE and this Court.

Throughout the litigation of the matter in front of the Court sitting in habeas, Petitioner has been represented by counsel, has been provided notice for the basis of his detention, and has been heard by both this Court and the government concerning his arguments about the changed circumstances underlying his detention. This process has effectively cured any administrative deficiencies stemming from the government's failures

---

[13] Sur-reply (Dkt. 18), at .
[14] *Id.*
[15] *Id.* at 3.
[16] Not. Alien. (Dkt. 18, Ex. 2), at 1–7.

to comply with 8 C.F.R. § 241.13(i)(2), which requires that Petitioner be notified for the reasons behind the revocation of his release, be given an "initial informal interview" so that Petitioner can "respond to the reasons for revocation stated in the notification[,]" and then be given the opportunity to present evidence rebutting the government's belief there is a significant likelihood his removal can be effectuated.

Petitioner has in this case been provided an opportunity to present evidence, respond to the government's arguments, and has submitted a robust written record for the Court to consider. And the Court has conducted a de novo review of the legal questions presented.

Through briefing, it has been made abundantly clear that Petitioner is removable, owing to his myriad sexual crimes.[17] Further, Petitioner never appealed his original order of removal.[18] The government has also provided convincing evidence that potential for removal exceeds the "no significant likelihood" standard that 8 C.F.R. § 241.13(i)(2) requires in order for a detainee to be released following a revocation of an OOS. On this point, the government represents that on August 5, 2025, it sent a request for travel documents to the appropriate Iranian authorities in order to begin the process of removal.[19] The government also represents that Iran is accepting "flights of Iranian citizens who have been ordered removed from the United States."[20] Finally, the government represents that Iran is accepting copies of passports and birth certificates for the purpose of proving Iranian

---

[17] Resp. Pet. (Dkt. 15), at 2.

[18] Pet. (Dkt. 1), at 1.

[19] Resp. Pet. (Dkt. 15), at 4.

[20] *Id.*

citizenship, which has allowed Iran to issue travel documents.[21] Petitioner's ICE file contains copies of such documents.[22] Accordingly, the government represents that it "believe[s] removal can be effectuated in the reasonably foreseeable future."[23]

Taken together, Petitioner has been fully capable of making robust argument against his detention. Accordingly, the Court finds that even if the government failed to comply with § 241.13(i)(2)–(3), such failure has not prejudiced Petitioner.

**II.   Even if the government failed to comply with 8 C.F.R. § 241.13(i)(2)–(3), and such noncompliance were prejudicial, the Court would not be able to issue a writ of habeas corpus as an appropriate remedy.**

Petitioner has presented the Court a variety of cases purportedly finding that failure to adhere to 8 C.F.R. § 241.13(i)(2) or (3) requires granting a writ of habeas corpus.[24] None of these cases are binding upon this Court, nor does the Court find them particularly applicable to this case. In the first case Petitioner cites for this proposition, *Roble v. Bondi*, the court found that "the Government plainly failed to meet its burden to show that, 'on account of changed circumstances … there is a significant likelihood that [the alien] may be removed in the foreseeable future[.]"[25] This was a serious substantive defect in the government's detention of the petitioner in that case, beyond a mere failure to follow the regulation to a T—a substantive defect not present here. Next, Petitioner cites *Sarail A v.*

---

[21] Decl. Arthur Hawthorne, III (Dkt. 15, Ex. 5), at 1–2.

[22] *Id.* at 1.

[23] *Id.* at 2.

[24] *See* Pet.'s Resp. (Dkt. 16), at 5–6.

[25] Case No. 25-cv-3196, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025).

7

*Bondi*, which found that *in addition to* failing to comply with 8 C.F.R. § 241.13(i)(3), the government failed to consider the factors in § 241.13(f) to make the determination that the alien's removal would be significantly likely at some point in the reasonably foreseeable future.[26] In *Yee S. v. Bondi*, the Court found that the government's representations as to changed circumstances surrounding the petitioner's removal were lacking, in that the government did not even indicate from which country it was seeking travel documents.[27] This case is distinguishable from *Yee S.* in light of the government here providing far more detail related to its plans for Petitioner's removal. Petitioner further provides a few cases, starting with *Constantinovici v. Bondi*, that find that ICE's regulatory violations are equivalent to a Fifth Amendment violation and are prejudicial such that they require release.[28] For reasons both previously and subsequently stated, this Court disagrees with such conclusions, and cannot agree that mere failure to comply with such regulations does not support an automatic writ of habeas corpus.[29]

Habeas relief is reserved for errors constitutional in scale.[30] "The Supreme Court [has] made clear that error regarding one's confinement does not mean that release is the

---

[26] Case No. 25-cv-2144, 2025 WL 2533673, at *3–4 (D. Minn. Sept. 3, 2025).

[27] No. 25-cv-02782-JMB-DLM, ECF No. 13, at *8 (D. Minn. Oct. 9, 2025).

[28] No. 25-cv-02405-RBM-AHG, ECF No. 15, at *9 (S. D. Cal. Oct. 10, 2025).

[29] *See Nguyen v. Noem*, Case No. 25-CV-057-H, 2025 WL 2737803, at *6 (N. D. Tex. Aug. 10, 2025).

[30] *See Sunal v. Large*, 332 U.S. 174, 179 (1947) ("It is plain, however, that the writ is not designed for collateral review of errors of law committed by the trial court—the existence of any evidence to support the conviction, irregularities in the grand jury procedure, departure from a statutory grant of time in which to prepare for trial, and other errors in trial procedure which do not cross the jurisdictional line.").

appropriate remedy."[31] Petitioner has failed to show that the appropriate remedy for ICE's regulatory violations is a writ of habeas corpus. There is no relief that this Court could offer, since Petitioner has now been adequately provided notice as to the reason for his revocation and detention, he has been provided a forum to rebut the reasons for his detention, and it is still the case that Petitioner is statutorily removable. Every procedural wrong that Plaintiff could conceivably allege as a result of the government's violations of 8 C.F.R. § 241.13(i)(2)–(3) has been righted by the very existence of this habeas proceeding. At best, the Court could order Petitioner released from detention for failure to follow 8 C.F.R. § 241.13(i)(2)–(3), but that does not change the fact that Petitioner is still removable and could promptly be served with a notice of revocation, detained, and provided a brief interview. A do-over in this case would be wasteful.

### III. Petitioner has not suffered a Fifth Amendment violation.

An individual may not be detained punitively without adequate due process after a criminal proceeding.[32] To the extent that Defendant claims habeas relief is an appropriate remedy for his alleged Fifth Amendment injuries, the Court cannot authorize relief, as it is unclear what those injuries are at this point. Petitioner has hinged his unlawful detention argument on this Court finding that Petitioner sufficiently rebutted the government's contention that he will be removed from the United States in the reasonably foreseeable

---

[31] *Nguyen*, 2025 WL 2737803, at *6 (discussing the holding in *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005), which held that a state's defective parole system does not require release, but rather renewed review for parole eligibility).

[32] *Zadvydas*, 533 U.S. at 690.

future.[33] This is a steep hill for Petitioner to climb, and he has failed to do so. Again, this Court must give deference to the foreign policy judgments of the Executive. While Petitioner claims it is unlikely that Iran will accept removed aliens from the United States in light of kinetic operations against the Islamic Republic in the summer of 2025, a government official has provided a sworn statement to the opposite, based on his reasoned judgment.[34] Further, the government also represents that it has taken concrete steps towards attempting to remove Petitioner.[35] Again, this Court owes due deference to the Executive's foreign policy considerations and will not substitute its own or another party's analysis of the state of the world for the Executive's in this context.[36] If anything, the *government* has shown that there are changed circumstances that have made removal more likely than in the first round of Petitioner's attempted removal in 2015–16. Petitioner has thus failed to meet his burden and cannot demonstrate that his detention is punitive, rather than a lawful attempt to effectuate removal.[37]

Since this, then, is civil detention without any express intent to punish Petitioner, to prevail on his Fifth Amendment claim, Petitioner must provide a showing to the Court "that

---

[33] Pet. (Dkt. 1), at 19.

[34] Decl. Arthur Hawthorne, III (Dkt. 15, Ex. 5), at 1–2.

[35] *Id.* at 1.

[36] *Zadvydas*, 533 U.S. at 700.

[37] In Petitioner's Reply (Dkt. 16), at 4, Petitioner claims that ICE's admission that Petitioner was re-detained because of his being a sex offender is an admission that his detention is punitive. The Court disagrees, as his past conviction is the statutory basis of his removal on account of a conviction of an aggravated felony. Further, to the extent that Petitioner was singled out because of his past crimes against children, it still does not strike the Court as "punitive" if the government chooses to prioritize the removal of such aliens.

the conditions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the conditions 'appear excessive in relation to that purpose.'"[38] Petitioner has failed to make such a showing. He has stated in passing that Petitioner is currently detained in "a facility designed to punish convicted criminals" and that his "conditions of confinement are indistinguishable from those of convicted criminals."[39] He then cites a document from the Department of Homeland Security, by all accounts unrelated to Petitioner's particular case, that talks about the unpleasant conditions of prison and urges certain aliens to self-deport.[40] A sentence about the place of detention and the citation to a random DHS document do not constitute a showing that Petitioner's detention is either not rationally related to nonpunitive purposes or excessive in relation to whatever purpose it may serve. Without (a lot) more factual development, Petitioner cannot make a showing satisfactory to this Court to demonstrate his Fifth Amendment rights have been injured.

### IV. Petitioner has failed to adequately explain any basis upon which this Court may grant declaratory relief.

Petitioner asks for a declaratory injunction on a variety of matters in his Petition, but otherwise fails to explain to the Court in sufficient detail why such relief is warranted or on what basis the Court should grant it. However, it seems apparent already that Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(1), and the government makes no

---

[38] *Betancourt Barco v. Price*, 457 F. Supp. 3d 1088, 1098 (D. N. M. 2020) (citing *Kinglsey v. Hendrickson*, 576 U.S. 389, 398 (2015)).

[39] Pet. (Dkt. 1), at 2–3.

[40] *Id.* at 12–13.

effort to challenge that. That fact does not have any apparent bearing on the outcome of this case, though, since re-detention is still permissible under the statute.

Petitioner then asks this Court to declare that Petitioner has once before demonstrated to the government's satisfaction that there is no significant likelihood that he can be removed in the reasonably foreseeable future and that Respondent's previously failed to rebut that showing. But as previously stated, the Court finds that Respondent has now made a convincing showing that Petitioner can be removed to Iran in the reasonably foreseeable future. A declaratory judgment is thus improper.[41]

### *Conclusion*

For the foregoing reasons, Petitioner's Petition (Dkt. 1) is **DENIED**. A separate judgment will follow.

**IT IS SO ORDERED** this 31st day of October 2025.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[41] *State Farm Mut. Auto. Ins. Co. v. Mid-Continent Cas. Co.*, 518 F.2d 292, 296 (10th Cir. 1975) ("[A] declaratory judgment should not be entered unless it disposes of a controversy and serves a useful purpose.").